UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA,<br><br>Plaintiff,<br><br>v.<br><br>ANDRES CAMPOS SALAS, et al.,<br><br>Defendants. | Case No.  24-mc-80105-JCS<br><br>**ORDER RE MOTION TO QUASH, MOTION TO REMAND**<br><br>Re: Dkt. Nos. 4, 14 |

## I. INTRODUCTION

This case arises out of a criminal case, *In the matter of People of the State of California v. Andres Campos Salas*, Case No. C2200679, currently pending in the Superior Court for the State of California, County of Santa Clara ("State Court criminal proceeding"). The defendant in that case, Andrew Campos Salas, through his attorney, Dana Fite, issued a state court subpoena ("State Court Subpoena") for the production of documents to the United States Drug Enforcement Agency ("DEA") in December 2022. At the same time, Fite made a request for production of documents under the Department of Justice's *Touhy* regulations. Fite served a second *Touhy* request in February 2023. The DEA produced some but not all of the records requested by Fite in the *Touhy* requests and declined to comply with the State Court Subpoena based on the United States' and federal agencies' sovereign immunity to the issuance or enforcement of state court subpoenas.

On March 7, 2024, Fite brought a motion in the State Court criminal proceeding asking the court to compel the DEA "to appear and show cause why a lawful subpoena duces tecum, issued by undersigned counsel, served upon the DEA and returnable to this Court on January 10, 2023, has not been obeyed." The court granted the request, issuing an Order to Show Cause on April 15, 2024 ("State Court OSC"). On May 8, 2024, the DEA removed the subpoena proceeding to this

1  Court pursuant to 28 U.S.C. § 1442(a)(1).

2  Presently before the Court are: 1) Non-Party United States Drug Enforcement
3  Administration's Motion to Quash State Court Subpoena and Vacate State Court Order to Show
4  Cause, dkt. no. 4 ("Motion to Quash"); and 2) Salas's Motion to Remand to State Court, dkt. no.
5  14 ("Motion to Remand"). The Court finds that the motions are suitable for determination without
6  oral argument and therefore vacates the motion hearing set for August 14, 2024. For the reasons
7  set forth below, the Motion to Remand is DENIED and the Motion to Quash is GRANTED.[1]

## II.  LEGAL STANDARDS

### A.  Removal Under 28 U.S.C. § 1442(a)(1)

The DEA removed this action to federal court under 28 U.S.C. § 1442(a)(1), which permits removal of actions against federal officers and agencies to federal court, providing as follows:

> (a) A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
>
> (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442(a)(1).

"Historically, removal under § 1442(a)(1) and its predecessor statutes was meant to ensure a federal forum in any case where a federal official is entitled to raise a defense arising out of his official duties." *Arizona v. Manypenny*, 451 U.S. 232, 241 (1981). The Ninth Circuit has held that "a contempt action against a federal official for failure to comply with a state court order, although ancillary to the underlying state action, is a distinct action which may be removed." *Swett v. Schenk*, 792 F.2d 1447, 1450 (9th Cir. 1986); *see also Nationwide Invs. v. Miller*, 793 F.2d 1044, 1047 (9th Cir. 1986) ("At least part of the purpose of § 1442(a)(1) is to prevent state courts from

---

[1] The parties have consented to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

2

1  unlimited exercise of their subpoena power against federal officers upon pain of contempt. The
2  form of the action is not controlling; it is the state's power to subject federal officers to the state's
3  process that § 1442(a)(1) curbs.").

4  The 30-day time limit for removal upon which Salas relies is set forth in 42 U.S.C. §
5  1446(g), which provides:

> Where the civil action or criminal prosecution that is removable under section 1442(a) is a proceeding in which a judicial order for testimony or documents is sought or issued or sought to be enforced, the 30-day requirement of subsection (b) of this section and paragraph (1) of section 1455(b) is satisfied if the person or entity desiring to remove the proceeding files the notice of removal not later than 30 days after receiving, through service, notice of any such proceeding.

42 U.S.C. § 1446(g).

### B.   *Touhy*

In *United States ex. rel. Touhy v. Ragen*, the Supreme Court held that a subordinate federal officer could not be held in contempt for refusing to obey a subpoena when such refusal was in accordance with valid federal regulations governing the release of official documents. 340 U.S. 462, 469 (1951) ("*Touhy*").  Pursuant to *Touhy*, the Ninth Circuit has held that properly promulgated regulations followed by a federal officer in the course of their duties have "the force of law, and the court[s] [have] no jurisdiction or power to punish an officer for conforming to that law." *Swett v. Schenk*, 792 F.2d at 1451 (internal quotation and citations omitted).  "Under what is known as the '*Touhy* doctrine,' not only is a court prohibited from holding a federal officer in contempt for non-compliance with a subpoena when following a regulation to the contrary but a court cannot even investigate the appropriateness of the federal officer's reliance on the regulation in question." *Massock v. Superior Ct.*, No. C99-3713 SC, 2000 WL 10240, at *3 (N.D. Cal. Jan. 4, 2000).

### III.  MOTION TO REMAND

#### A.  Contentions of the Parties

In his Motion to Remand, Salas argues that this case must be remanded because removal was untimely under 28 U.S.C. § 1446(g), which requires that a "civil action" or "criminal prosecution" must be removed within 30 days of receiving notice of "such a proceeding."  Motion

3

1    to Remand at 10.  This deadline began to run, according to Salas, in December 2022, when the
2    State Court subpoena was originally served on the DEA, seventeen months before the DEA's
3    removal. *Id.* at 7-9.  Salas argues that the State Court OSC did not mark the beginning of the
4    "proceeding" as it was "nothing more than an opportunity for the DEA to come before the state
5    court and offer explanations, legal and factual, before that court decided what to do next." *Id.* at 8.
6    Salas points out that "nothing in the OSC amounted to a contempt finding, nor did it contain
7    language more common to such orders, calling for a party to show why it should not 'be held in
8    contempt,' or something along those lines." *Id.*  Furthermore, he states that "when requesting the
9    order, Mr. Salas was careful to note that he was not asking the state court to 'find anyone in
10   contempt', and went on to explain the potential responses and proceedings that might follow
11   issuance of the OSC." *Id.* Finally, Salas argues that while the federal officer removal provision is
12   construed broadly, the procedural requirements governing such removal are strictly construed.  *Id.*
13   at 6 (citing *Hawaii v. Deedy*, 532 Fed.Appx. 751, 752 (9th Cir. 2013)).

14   The DEA responds that 28 U.S.C. § 1442(a)(1) is to be construed broadly in favor of
15   removal and asserts that in light of this "clear command" "some federal courts have found that the
16   30-day period under Section 1446(g) is not binding where the federal government is asserting a
17   sovereign immunity defense."  DEA's Opposition to Motion to Remand and Reply to Motion to
18   Quash, dkt. no. 16 ("DEA Opposition") at 1-2 (citing *Hernandez v. Six Flags Magic Mountain,
19   Inc.*, 688 F. Supp. 560, 562 (C.D. Cal. 1988); *Dietrich v. Cooperstein*, No. 94-cv-4333 FMS, 1995
20   WL 59494, at *2 n.5 (N.D. Cal. Feb. 8, 1995)). In any event, the DEA contends, "the 30-day
21   period under Section 1446(g) does not begin to run until the date of the coercive action, *e.g.*, the
22   date a state court subpoena, which is issued by counsel, . . . is "sought to be enforced" by a state
23   court, *i.e.*, by the issuance of an OSC. *Id.* (citing 28 U.S.C. § 1446(g); *Massock v. Superior Ct.*,
24   No. 99-cv-3713-SC, 2000 WL 10240, at *2 (N.D. Cal. Jan. 4, 2000)).  As the DEA removed
25   within 30 days of the State Court OSC, its removal was timely, according to the DEA. *Id.* at 2.
26   In his Reply, Salas argues, for the first time, that the subpoena proceeding in the State
27   Court criminal case began on: 1) February 10, 2023, which was the deadline for compliance with
28   the State Court Subpoena; or 2)  September 12, 2023, when the State Court issued an order in

4

reference to the subpoena stating that the "custodians" should file "appropriate paperwork" "if [they] have any objections" to the subpoena; dkt. no. 1-5 at ECF p. 2; or 3) September 28, 2023, which is the deadline set by the State Court for filing those objections. Reply to DEA's Opposition to Motion for Remand to State Court, dkt. no. 17 ("Salas Reply") at 3.

### B.  Discussion

The parties' disagreements with respect to whether this case should be remanded to state court focus on three main issues: 1) whether remand based on untimely removal is discretionary where removal is based on a sovereign immunity defense; 2) whether the 30-day time limit for removal should be construed narrowly or broadly in the context of this case; and 3) whether for the purposes of Section 1446(g) a "proceeding" commences when the subpoena issues, as Salas contends, or if it commences when the court becomes formally involved in enforcing the subpoena, as the DEA contends. The Court declines to decide the first question but concludes that the DEA's position on the second and third issues is correct and that those issues are dispositive.

### 1. Whether Remand is Discretionary Where Removal is Based on Sovereign Immunity Defense

The DEA cites a line of cases that traces back to *Loftin v. Rush*, 767 F.2d 800, 805 (11th Cir. 1985) for the proposition that in light of the liberal construction afforded Section 1442(a), Section 1446(g) is not binding where the federal government is asserting a sovereign immunity defense. DEA Opposition at 2 (citing *Hernandez v. Six Flags Magic Mountain, Inc.*, 688 F. Supp. 560, 562 (C.D. Cal. 1988); *Dietrich v. Cooperstein*, No. 94-cv-4333 FMS, 1995 WL 59494, at *2 n.5 (N.D. Cal. Feb. 8, 1995)). In these cases, the courts interpreted a past version of 28 U.S.C. § 1447(c) that provided: "If at any time before final judgment it appears that the case was removed improvidently *and* without jurisdiction, the district court shall remand the case ..." (emphasis added). They reasoned that the mandatory language of that section did not apply to an untimely removal because while an untimely removal may be "improvident" it does not deprive the court of jurisdiction because that deadline can be waived. *See Hernandez v. Six Flags Magic Mountain, Inc.*, 688 F. Supp. 560, 562 (C.D. Cal. 1988) ("The plain language of the removal statute indicates that remand is only mandatory where a case is 'removed improvidently' and the court is 'without

jurisdiction.' . . . Thus, although allowing an untimely petition is clearly the exception and not the rule, where the court has jurisdiction, it has the power to consider such a petition."); *Loftin v. Rush*, 767 F.2d 800, 805 (11th Cir. 1985) ("The timeliness of a removal petition is not jurisdictional . . . and we therefore have the power to review even an untimely petition.").

However, as Judge Lloyd has pointed out, these courts "relied in part on then-existing language in 28 U.S.C. § 1447 indicating that remand is only mandatory where a case is 'removed improvidently' and the court is 'without jurisdiction[ ]'" but "[t]his language . . . . was removed from 28 U.S.C. § 1447 in 1988." *Ligutom v. SunTrust Mortg.*, No. C10-05431 HRL, 2011 WL 445655, at *4 (N.D. Cal. Feb. 4, 2011) (citing 28 U.S.C. § 1447; *May v. Johnson Controls, Inc.*, 440 F.Supp.2d 879, 883–84 (W.D.Tenn. 2006)). In *May*, the court declined to follow *Hernandez*, pointing to the removal of the language in Section 1447 upon which the *Hernandez* court relied and finding that "[t]he great weight of the case law, as well as the present language of the statute, is contrary to this discretionary approach." 440 F. Supp. 2d at 884.

Given the change in the statutory language since *Loftin* and *Hernandez* were decided, and the fact that the DEA has not cited any cases that have adopted the discretionary approach based on the current statutory language, the Court questions whether those cases remain good law. It need not decide this question, however, as it finds that the case was timely removed for the reasons discussed below.

### 2. Whether Section 1446(g) Should be Construed Narrowly or Broadly

The parties' dispute as to whether the 30-day time limit under Section 1446(g) should be given a strict or liberal construction in the context of this case arises out of what appears to be a tension in the Ninth Circuit's case law, with the DEA relying on *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006) and Salas citing to an unpublished Ninth Circuit case, *Hawaii v. Deedy*, 532 Fed.App'x. 751 (9th Cir. 2013).

In *Durham*, the court considered whether the 30-day deadline for removing a civil action under Section 1446(b), imposing a general 30-day removal deadline that begins to run when the removing party receives the initial pleading, is "reset" when the party is placed on notice that the case is removable under Section 1442(a)(1) such that the case can be removed under that provision

6

even though the 30-day period under Section 1446(b) has already run. The court found that it is.

The court in *Durham* explained that while removal statutes are generally construed strictly, courts in the Ninth Circuit "do not interpret [their] jurisdiction under section 1442 so strictly." 445 F.3d at 1252. According to the *Durham* court, "Congress passed the federal officer removal statute to protect the federal government from South Carolina's attempt to nullify federal tariff laws in the 1830s . . . . [a]nd the Supreme Court has mandated a generous interpretation of the federal officer removal statute ever since[.]" *Id.* (citations omitted). The court stated, "We take from this history a clear command from both Congress and the Supreme Court that when federal officers and their agents are seeking a federal forum, we are to interpret section 1442 broadly in favor of removal." *Id.* The Court further found that "where the timeliness of a federal officer's removal is at issue, we extend section 1442's liberal interpretation to section 1446." *Id.* at 1253.

On the other hand, Salas points to *Hawaii v. Deedy*, 532 Fed.Appx. 751 (9th Cir. 2013), an unpublished opinion in which the court found that where a federal officer charged with murder in state court removed the criminal action to federal court under Section 1442(a)(1) seven months after the state court criminal proceeding was initiated, the removal was improper. 532 Fed.App'x. at 752. In reaching this conclusion, the court reasoned as follows:

> Deedy first argues that the district court committed legal error by stating that "removal jurisdiction must be strictly construed." Deedy contends that the court should have taken a more permissive approach to federal officer removal jurisdiction as required by *Willingham v. Morgan*, 395 U.S. 402, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969).
>
> Deedy's argument fails. He ignores the distinction between § 1442(a)(1) and § 1446(c)(1). It is correct that courts must liberally construe the substantive elements of federal officer removal jurisdiction under § 1442(a)(1). *See Willingham*, 395 U.S. at 407, 89 S.Ct. 1813 (rejecting "a narrow, grudging interpretation of § 1442(a)(1) ") (emphasis added). However, the district court did not base its decision on the substantive requirements for removal under § 1442(a)(1), but rather on Deedy's failure to meet the procedural requirements under § 1446(c)(1). **In interpreting a predecessor of § 1446(c)(1), we held that unlike the substantive provisions of § 1442(a)(1), the procedural elements of the federal officer removal statutes must be strictly construed.** *United States ex rel. Walker v. Gunn*, 511 F.2d 1024, 1026 (9th Cir.1975). The district court made no legal error.

*Id.* at 751-752 (emphasis added).

In *United States ex rel. Walker v. Gunn*, 511 F.2d 1024, 1026 (9th Cir.1975), upon which the *Deedy* court relied, the court found that removal by a federal officer of a state court criminal

7

action against him after jury selection had already begun was untimely under Section 1446(c), which at the time provided that "[t]he petition for removal of a criminal prosecution may be filed at any time before trial." 511 F.3d at 1026. In reaching this conclusion, the court noted that "Petitioner concedes and numerous cases so hold that the statute, insofar as the time for removal is concerned, is imperative and mandatory, must be strictly complied with, and is to be narrowly construed." *Id.* at 1026. The court did not mention that the case had been removed under the federal officer removal statute (Section 1442(a)(1)) or address the liberal construction that is afforded with respect to that statute. Moreover, it cited to the reasoning of a case in which removal was *not* based on federal officer removal, *Biscup v. People*, 129 F.Supp. 765 (W.D.N.Y.1955), in which the court found that an untimely removal based on the defendant's membership in the Seneca nation tribe was improper and cited the strict construction given to removal statutes. *Id.*

In the face of what appear to be contradictory holdings in *Dunham* and *Deedy* with respect to whether the procedural requirements of Section 1446 should be construed narrowly or liberally when applied to removal under Section 1442(a)(1), the undersigned concludes that *Durham* contains the more accurate statement of the law of this Circuit. First, *Durham* is a published case, while *Deedy* is not. Thus, while *Deedy* can be cited as persuasive authority, it is not binding whereas *Durham* is. *See Nuh Nhuoc Loi v. Scribner*, 671 F. Supp. 2d 1189, 1201 n. 10 (S.D. Cal. 2009) ("Although still not binding precedent, unpublished decisions have persuasive value and indicate how the Ninth Circuit applies binding authority."). Furthermore, the reasoning of *Deedy* is not persuasive. In contrast to *Durham*, the court in *Deedy* did not address the Congressional purpose for enacting Section 1442(a)(1), which is the justification courts have offered for construing the federal officer removal statute liberally, in contrast to most other removal statutes. Instead, the court in *Deedy* relied on *United States ex rel. Walker v. Gunn*, 511 F.2d 1024, 1026 (9th Cir.1975), which did not mention Section 1442(a)(1) at all and itself relied on *Biscup*, a case where the removal was on an entirely different ground.

The Court therefore concludes that in the Ninth Circuit, the liberal interpretation that applies to Section 1442(a)(1) also extends to the procedural requirements that govern such a

8

removal under Section 1446, as stated in *Durham.*

### 3. When a "Proceeding" Commences Under Section 1446(g)

The crux of the dispute as to whether this case should be remanded to state court is the question of when a subpoena enforcement proceeding commences for the purposes of starting the 30-day clock running. Salas advances two arguments to support his position: either the removal was up to seventeen months too late (because the subpoena issued seventeen months before the removal, the deadline to respond to the subpoena was fifteen months before the removal, the order setting a deadline for objections to the subpoena issued eight months before removal and the deadline for filing objections was seven months before removal) *or* the removal was premature (because the state court had not yet found the DEA in contempt, or even issued an order to show cause that specifically mentioned that possibility at the time of removal). Neither argument finds support in the case law of this Circuit or of other Circuits.

As to the first argument, Salas relies on the fact that a state court subpoena has the force of a court order under California law and non-compliance is punishable as contempt. *See* Cal. Code Civ. Proc. § 1209(a)(10). Because the subpoena is a court order that *might* subject a federal officer or agency to enforcement by a state court, Salas suggests, the 30-day clock under Section 1446(g) started running when the subpoena was issued or at least, no later than one of the following: 1) the deadline for production under the subpoena; 2) the date the state court issued an order setting a deadline for objections to the subpoena; or 3) the deadline for filing those objections.  But Salas has not pointed to any case in which a court has adopted any of these theories.  Further, Salas's theories ignore the case authority that points to the conclusion that removal under Section 1442(a)(1) is generally premature unless the federal officer has refused to comply with a subpoena and the state court has issued an order enforcing, or at least, threatening to enforce, the subpoena.

For example, in *Swett v. Schenk*, the leading Ninth Circuit case, the court rejected the appellant's argument that by allowing the federal officer whose testimony was sought to sit for a deposition, the federal agency waived its right to remove the case, reasoning that the officer "was not a defendant until he was ordered by the state court to testify against his wishes" and "[u]ntil this order to testify, there was no basis for removal under § 1442(a)." 792 F.2d 1447, 1450 (9th

1  Cir. 1986). Similarly, in *Massock v. Superior Ct.*, the court found removal under Section
2  1442(a)(1) to be proper, even though the removal occurred many months after the issuance of the
3  subpoena in that case, observing that "removal of this matter to a federal court became proper
4  under section 1442(a)(1) upon the issuance of the warrant and the initiation of this contempt action
5  against Massock." No. C99-3713 SC, 2000 WL 10240 (N.D. Cal. Jan. 4, 2000) at * 2 (citing *Swett
6  v. Schenk*, 792 F.2d 1447, 1450 (9th Cir. 1986)); *see also State of Ind. v. Adams*, 892 F. Supp.
7  1101, 1105–06 (S.D. Ind. 1995) (finding that neither the subpoena nor the state court's order
8  denying a motion to quash the subpoena rendered the case removable under Section 1442(a)(1)
9  and noting that "until the state court takes some action intended to coerce [the federal officers] into
10 complying with the subpoenas, the federal rights vindicated in *Touhy* have not been offended and
11 no action has been commenced against [the federal officers] which may be removed to federal
12 court."); *State of Ala. v. Stephens*, 876 F. Supp. 263, 264–65 (M.D. Ala. 1995) ("In this case, the
13 United States is attempting a short-cut to bring before a federal court the issue of whether [the
14 federal officer] may be compelled to testify in response to a state court subpoena before [the
15 federal officer] has refused to testify and before he has been placed in jeopardy of being cited for
16 contempt.").
17      The Court also notes that Salas's assertion that the 30-day limit began to run when the
18 subpoena issued (or when the deadline for compliance had passed, when the court set a deadline
19 for objecting to the subpoena or when the objection deadline had passed) seems to conflict with
20 the well-established rule that the initiation of contempt proceedings based on a failure to comply
21 with a subpoena qualifies as a state court "action" that is removable under purposes of §
22 1442(a)(1). *See Swett v. Schenk*, 792 F.2d 1447 (9th Cir. 1986). In particular, given that every
23 contempt proceeding traces back to the issuance of a subpoena, if this were sufficient to start the
24 30-day clock running, removal under Section 1442(a)(1) would almost always be time-barred by
25 the time the state court ordered the federal officer to testify "against [their] wishes[,]" *Swett v.
26 Schenk*, 792 F.2d at 1450, yet the Court has found *no* case in which a removal under Section
27 1442(a)(1) was found untimely on this basis.
28      The Court also finds unpersuasive Salas's assertion that that the State Court OSC does not

10

1  amount to the initiation of a contempt proceeding against the DEA because it was merely an
2  "opportunity" for the DEA to appear and explain why it had not "obeyed" the subpoena and did
3  not expressly threaten contempt. This argument is disingenuous. As Salas himself emphasizes,
4  "[a] properly-issued subpoena has the force of a court order, and non-compliance is punishable as
5  a contempt." Motion to Remand at 7; Cal. Code Civ. Proc. § 1209(a)(10); Cal. Pen. Code § 1331.
6  Therefore, when the state court ordered that the DEA must appear "and show cause why a lawful
7  subpoena *duces tecum*, issued by counsel, served upon the agencies, and returnable to this Court
8  on January 10, 2023, [had] *not* been obeyed[,]" State Court OSC (emphasis in original), the DEA
9  became a defendant in a contempt proceeding regardless of whether the state court expressly
10 stated that the DEA could be held in contempt for its failure to comply with the subpoena. The
11 Court notes that the order setting a deadline for objections, unlike the OSC, did *not* include any
12 finding that Salas's subpoena was lawful or that the DEA had failed to obey a lawful subpoena;
13 rather, it was essentially a scheduling order and thus did not constitute a sufficient threat of
14 contempt to initiate a contempt action. *See* dkt. no. 1-5 (9/12/2023 form order indicating "SDT"
15 hearing was continued and with notation stating, "If custodians have any objections they will need
16 to file appropriate paper work (Mtn. to quash)."

17 Furthermore, many courts have found that an order to show cause regarding an agency or
18 federal officer's failure to obey a subpoena is sufficient to make an enforcement action removable
19 under Section 1442(a)(1) even if the officer or agency has not (yet) been found to be in contempt.
20 *See, e.g.*, *State of Fla. v. Cohen, 887 F.2d 1451, 1452* (11th Cir. 1989) (holding that case was
21 removable under Section 1442(a)(1) when the state court issued an order to show cause why the
22 federal agency should not be held in contempt); *State of Wisconsin v. Schaffer*, 565 F.2d 961 (7th
23 Cir.1977) (same); *In re Backer*, No. 10 CIV 0862 (PGG), 2010 WL 2816789, at *7 (S.D.N.Y. July
24 16, 2010) (same). The undersigned agrees with these courts that the issuance of an order to show
25 cause regarding non-compliance with a state court subpoena after a federal officer or agency has
26 refused to comply under its *Touhy* regulations poses sufficient threat of enforcement by the state
27 court to make the enforcement action removable under 1442(a)(1), especially in light of the liberal
28 construction that applies to the federal officer removal statute, discussed above. The Court also

1 notes that Salas has not cited to any case in which a court has found that a state court order to
2 show cause why a federal officer or agency should not be held in contempt was not sufficient to
3 support removal under Section 1442(a)(1).

4 For these reasons – and because the DEA removed the subpoena enforcement action within
5 30 days of the issuance of the State Court OSC – the Court finds that the removal here was timely.
6 Therefore, the Motion to Remand is DENIED.

## IV. THE MOTION TO QUASH

### A. Contentions of the Partie

In the Motion to Quash, the DEA asserts that the State Court Subpoena cannot be enforced because "Congress has not expressly waived sovereign immunity in cases in which state courts seek to compel government employees to submit to subpoenas or court orders." Motion to Quash at 4 (quoting *Fed. Bureau of Investigation v. Superior Ct. of Cal.*, 507 F. Supp. 2d 1082, 1094 (N.D. Cal. 2007)). Further, the DEA contends, "[p]roperly promulgated regulations followed by federal officers in the course of their duties — like the Department of Justice's *Touhy* regulations, 28 C.F.R. §§ 16.21, *et seq.,* duly followed by the DEA here — have 'the force of law, and the court[s] [have] no jurisdiction or power to punish an officer for conforming to that law.'" *Id.* (quoting *Swett v. Schenk*, 792 F.2d at 1451). For these reasons, according to the DEA, the state court lacked jurisdiction to enforce the State Court Subpoena and therefore, under the doctrine of derivative jurisdiction, this Court also lacks jurisdiction to enforce the subpoena, which should be quashed. *Id.* (citing *In re Elko Cnty. Grand Jury*, 109 F.3d 554 (9th Cir. 1997), *cert denied*, 522 U.S. 1027 (1997)).

In his opposition to the Motion to Quash (which is filed in a joint brief that also includes his Motion to Remand, dkt. no. 14), Salas argues that the Court should not quash the State Court Subpoena but should, instead, remand the enforcement action to the state court, as discussed above. Salas further asserts that the State Court Subpoena should not be quashed because the procedures under the applicable *Touhy* regulations, including issuance of a final decision in consideration of the explicitly enumerated considerations in 28 U.S.C. § 16.26(a)-(c), may or may not have been fully implemented. *Id.* at 11. The proper next step, according to Salas, is for the

12

DEA to inform the state court that there has been a qualifying final decision and allow that court to decide whether production should be ordered. *Id.* According to Salas, "the outcome of this proceeding is not as pre-determined as the government might suppose" and therefore the subpoena should not be quashed. *Id.* Salas further asserts that the motion should not be quashed in light of the potential significance of the material the DEA is withholding for the outcome of the criminal case. *Id.* at 11-13.

In its Reply, the DEA rejects Salas's argument that the motion should not be quashed "due to the alleged importance of '[t]he material identified in the subpoena.' " Dkt. no. 16 at 4 (quoting dkt. no. 14 at 11–12). The DEA argues that Salas "cannot simply decline to follow this process and instead demand that a state court exercise jurisdiction over the federal government in violation of the Supremacy Clause and 'in contravention of our dual form of government and in derogation of the powers of the federal sovereignty.' " *Id.* (citing *Civiletti v. Municipal Court,* 172 Cal. Rptr. 83, 86 (Cal. App. 1981); *Durham*, 445 F.3d at 1252–53).

### B. Discussion

Salas does not dispute that the DEA has addressed his document requests only under its *Touhy* regulations, 28 C.F.R. §§ 16.21, *et seq.*, consistently maintaining that the State Court Subpoena cannot be enforced against the federal government because of the United States' and federal agencies' sovereign immunity to the issuance or enforcement of state court subpoenas under the Supremacy Clause, U.S. CONST. art. VI, cl. 2. Indeed, it is well-established that "Congress has not expressly waived sovereign immunity in cases in which state courts seek to compel government employees to submit to subpoenas or court orders." *Fed. Bureau of Investigation v. Superior Ct. of Cal.*, 507 F. Supp. 2d 1082, 1094 (N.D. Cal. 2007). Thus, to the extent that the DEA has failed to comply with the State Court Subpoena, it is immune from enforcement of the subpoena under the Supremacy Clause and the *Touhy* doctrine. *In re Elko County Grand Jury*, 109 F.3d 554 (9th Cir. 1997), cert denied, 522 U.S. 1027 (1997) (holding that, where a Federal agency bars disclosure of official information under a regulation analogous to 28 C.F.R. § 16.21 *et seq.*, the only appropriate method to challenge that decision is through an Administrative Procedure Act proceeding in United States District Court). Further, under the

doctrine of derivative jurisdiction this Court acquired no jurisdiction when the DEA removed the case from the state court because the state court lacked jurisdiction to issue or enforce the subpoenas in the first instance.  *See In re Elko Cnty. Grand Jury*, 109 F.3d at 555; *Fed. Bureau of Investigation*, 507 F. Supp. 2d at 1090.

Accordingly, the United States' Motion to Quash is GRANTED. This case is DISMISSED, The Clerk is instructed to close the case.

**IT IS SO ORDERED.**

Dated:  August 12, 2024

_____
JOSEPH C. SPERO
United States Magistrate Judge

14